IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHNNY S. YORK,                           Case No. 6:12-cv-01420-MA

        Plaintiff,                        OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

KATHRYN TASSINARI
DREW L. JOHNSON
1700 Valley River Drive
Eugene, OR 97405

    Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

SUMMER STINSON
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Johnny S. York brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 25, 2008, plaintiff protectively filed applications for DIB and SSI alleging disability as of August 1, 2002. The claims were denied initially and on reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on February 14, 2011, at which plaintiff appeared with his attorney and testified. At the hearing, plaintiff amended his disability onset date to February 3, 2007. A vocational expert also appeared and testified. On March 17, 2011, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review on July 2, 2012. The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff was 48 years old on the date of his alleged onset of disability, and 51 years old on the date of the hearing. Plaintiff

completed ninth grade and has no further education.  Plaintiff has
past relevant work as a gas station attendant, a truck driver, and
a sheet counter in a paper corrugation factory.  Plaintiff alleges
that he is unable to work due to low back pain, dizziness,
blackouts, depression and difficulty sleeping.

### THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential
process for determining whether a person is disabled.  Bowen v.
Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step
is potentially dispositive.  The claimant bears the burden of proof
at steps one through four.  See Valentine v. Comm'r Soc. Sec.
Admin., 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the
burden shifts to the Commissioner to show that the claimant can do
other work which exists in the national economy.  Andrews v.
Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status
requirements of the Social Security Act through March 31, 2007.  A
claimant seeking DIB benefits under Title II must establish
disability on or prior to the last date insured.  42 U.S.C. §
416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in
substantial gainful activity since February 3, 2007, the alleged
onset of disability.  See 20 C.F.R. §§ 404.1520(b), 404.1571 et
seq., 416.920(b), 416.971 et seq.

3 - OPINION AND ORDER

At step two, the ALJ found that plaintiff had the following severe impairments:  chronic low back pain secondary to lumbar degenerative disc disease with central stenosis at L2-3; status post instrumented fusion L4-5, but no neurological deficits; and obesity.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work except reduced by occasional climbing of ladders, ropes, scaffolds, ramps and stairs, and occasional stooping.  The ALJ found plaintiff retains the ability to frequently crouch, crawl, kneel, and balance.  The ALJ found plaintiff is further limited to no public contact, and only brief occasional contact with coworkers, and is limited to tasks no more complex than unskilled entry level work as defined in the Dictionary of Occupational Titles.  See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff unable to perform any past relevant work.  See 20 C.F.R. §§ 404.1565, 416.965.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that

plaintiff can perform.   See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).   Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

### ISSUES ON REVIEW

Plaintiff contends the ALJ committed the following errors: (1) failed to find his depression and antisocial personality disorder severe at step two; (2) improperly discredited his testimony; (3) failed to properly consider the lay testimony; and (4) improperly concluded that he could perform other work in the national economy at steps four and five.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Id.; Valentine, 574 F.3d at 690.   The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.   Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).   If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not

substitute its judgment for that of the Commissioner." <u>Edlund v.</u> <u>Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001); <u>Batson v.</u> <u>Commissioner of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004).

## DISCUSSION

## I.    <u>The ALJ Did Not Err at Step Two</u>

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. <u>See Yuckert</u>, 482 U.S. at 145; 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" <u>Smolen v.</u> <u>Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996)(quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." <u>Id.</u> (citing <u>Bowen</u>, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. <u>Id.</u> A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show that his medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Upon identification of a colorable claim of mental impairment, an ALJ must apply a "special technique[.]" 20 C.F.R. §§ 404.1520a(a), 416.920a(a); Keyser v. Comm'r, Soc. Sec. Admin., 648 F.3d 721, 725-26 (9th Cir. 2011).  An ALJ's decision must include a specific finding as to the degree of mental limitation in each of four broad functional areas:  activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)&(e); 416.920a(c)&(e).

Plaintiff contends the ALJ erred in failing to find his depression and antisocial personality disorder severe impairments at step two.  The Commissioner responds substantial evidence supports the ALJ's step two determination, and that even if the ALJ erred, the error was harmless because the ALJ incorporated plaintiff's alleged functional limitations resulting from his mental limitations into the RFC.  The Commissioner is correct.

At step two, the ALJ correctly applied the special technique, discussing that plaintiff's medically determinable depression and cannabis abuse caused no restrictions in his activities of daily living and that he has not suffered any episodes of decompensation. These findings are not challenged.

In the areas of areas of social functioning and concentration, persistence, and pace, the ALJ determined that plaintiff has mild limitations. The ALJ discussed that plaintiff had been diagnosed with depression in 2001, and that his treating physician, Harold

Perez-Gil, M.D., prescribed Fluoxetine.    The ALJ discussed plaintiff's complaint to Dr. Perez-Gil that he had decreased interest in activities and difficulty concentrating, and that Dr. Perez-Gil responded by increasing his dosage of Fluoxetine.    The ALJ noted plaintiff's own testimony that he had denied any suicidal thoughts, that his inactivity had led to depression, and that he had not resumed medication for his depression or otherwise sought mental health treatment.    Additionally, the ALJ discussed lay testimony from plaintiff's son who indicated plaintiff was depressed, but that plaintiff's isolation also was due to lack of income and lack of transportation.

The ALJ determined that based on plaintiff's depression, plaintiff could have some concentration difficulty, however, plaintiff could still concentrate sufficiently to perform simple tasks, maintain a schedule, and complete a normal workday and workweek, citing the Mental Residual Functional Capacity (MRFC) Assessment completed by Megan D. Nicholoff, Psy. D., an agency non-examining physician.    Based on this evidence, the ALJ found that plaintiff had mild limitations in the areas of social functioning and concentration, persistence and pace.

In the decision, the ALJ resolved step two in plaintiff's favor, determining that plaintiff's chronic low back pain and obesity were severe impairments. Tr. 30. Although the ALJ did not expressly refer to plaintiff's diagnosis of antisocial personality

disorder at step two, the ALJ did determine that plaintiff's medically determinable depression and cannabis abuse were not severe.

Having reviewed the evidence, I conclude that even if the ALJ erred in failing to find plaintiff's depression and antisocial personality disorder severe at step two, the error is harmless because the ALJ considered and incorporated plaintiff's functional limitations resulting from his mental impairments at step four. Lewis v. Atrue, 498 F.3d 909, 911 (9th Cir. 2007); Burch, 400 F.3d at 682. As the Commissioner correctly indicates, the ALJ accounted for plaintiff's mental health limitations in the RFC by limiting plaintiff to no public contact and only brief occasional contact with coworkers.

In his reply, plaintiff acknowledges that the ALJ included some of his mental health functional limitations in the RFC, but submits that the ALJ's exclusion of his antisocial personality disorder at step two was not harmless because the ALJ failed to include plaintiff's inability to deal appropriately with supervisors as a limitation in the RFC. I disagree.

Plaintiff submits that his alleged difficulty appropriately responding to supervisors is supported by a November 11, 2006, psychodiagnostic evaluation performed by William A. McConochie, Ph.D., an examining physician. Dr. McConochie diagnosed plaintiff with dysthymic disorder, rule-out polysubstance abuse, and

antisocial personality disorder, and noted that plaintiff was moderately impaired with respect to his social interactions. Dr. McConochie discussed plaintiff's history of incarcerations, lack of a girlfriend, social self-isolation, and discomfort with people and cited those factors as supporting his antisocial personality disorder diagnosis. Dr. Moconochie noted that plaintiff appears to "self-medicate with marijuana" and that plaintiff was not interested in discontinuing his marijuana use. In the report, a moderate impairment is defined as "[p]yschologically-based problems that are likely to cause an employer to warn the employee that if behavior does not improve, dismissal is imminent." Tr. 341. Contrary to plaintiff's suggestion, this definition of "moderate" is not limited to plaintiff's alleged difficulty with supervisors, as opposed to discomfort with people generally.

To the extent Dr. McConochie indicated plaintiff had moderate difficulties with social interaction, I conclude the ALJ rationally interpreted those limitations to relate to his social isolation and discomfort around others and appropriately included those functional limitations in the RFC. Furthermore, aside from Dr. McConochie's definition of moderate, plaintiff does not cite any evidence supporting his alleged limitation in responding to supervisors. To be sure, the body of Dr. McConochie's evaluation does not reflect any complaint made by plaintiff relating to plaintiff's alleged difficulty responding to supervisors. Indeed,

at the hearing, plaintiff testified that he quit his previous jobs due to back pain, and plaintiff offered no testimony describing difficulty working with supervisors.

Furthermore, the MRFC completed by Dr. Nicholoff and relied upon by the ALJ indicates that plaintiff is not significantly limited in his "ability to accept instructions and respond appropriately to criticism from supervisors." Tr. 395; see also Tr. 372. Indeed, the MRFC indicates that plaintiff is moderately limited in his ability to respond appropriately to the general public and to get along with coworkers, limitations which were consistent with Dr. McConochie's opinion and that the ALJ included in the RFC. And, contrary to plaintiff's assertion, neither his Adult Function Report nor the lay witness report describe limitations specific to his alleged inability to get along with supervisors. Therefore, plaintiff's contention that he was moderately limited in his ability to respond appropriately to supervisors simply is not supported by substantial evidence in the record, and the ALJ was not required to include such a limitation in the RFC.

Accordingly, any alleged error in excluding plaintiff's depression and antisocial personality disorder as severe impairments at step two was harmless because the ALJ included the only mental health functional limitations supported by substantial

evidence in the record into the RFC at step four.[1]  <u>Lewis</u>, 498 F.3d at 911.

## II.  <u>Plaintiff's Credibility</u>

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. <u>Tommasetti</u>, 533 F.3d at 1039; <u>Smolen</u>, 80 F.3d at 1282.  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  <u>Carmickle v. Commissioner Soc. Sec. Admin.</u>, 533 F.3d 1155, 1166 (9th Cir. 2008); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  <u>Tommasetti</u>, 533 F.3d at 1039; <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995).

---

[1]I note that other than the ALJ's evaluation of Dr. McConochie's records as they pertain to step two, plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence.

Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

At the hearing, plaintiff testified that he worked for many years as a truck driver, but can no longer perform that job after having three back surgeries. Plaintiff testified that he lives in a small trailer on his son's property and receives food stamps. Plaintiff stated that he takes Ibuprofen and Flexeril for his back, and that he also smokes marijuana to relax. Plaintiff acknowledged that he does not have a medical marijuana card and was receiving marijuana from friends. Plaintiff described that he had been smoking marijuana once a day six months earlier, but at the time of the hearing, he was smoking only once a month.

Plaintiff stated that he can lift 20 pounds up to two-thirds of the day, can sit for 30 minutes or stand for 10 minutes before needing to switch positions, and can walk 30 minutes before needing to rest. Plaintiff stated that he stopped taking Celebrex because Ibuprofen is more effective at controlling his pain. Plaintiff testified that he lays down for four to six hours a day for comfort and sleeps three hours each night. Plaintiff described that on an

13 - OPINION AND ORDER

average day, his pain is at a two or three on a 10-point scale, and that once a week, his pain is at a seven.

At the hearing, plaintiff described that on a typical day, he ensures his grandson gets ready for school and walks his grandson to the bus stop.  Plaintiff testified that he watches television or reads until his grandson returns from school.  Plaintiff stated that he is able mow the lawn using the riding lawn mower and takes out the trash.  In his Adult Function Report, plaintiff reported that he wakes up through the night, and in the morning experiences stiffness in his back.  Plaintiff stated that he is uncomfortable around people, is depressed, and does not like to go outside.

In the decision, the ALJ rejected plaintiff's testimony about the severity of his symptoms because his back pain was controlled with conservative treatment, his alleged limitations were inconsistent with his medical records, and his illegal drug use. I conclude that these reasons, taken together, are clear and convincing reasons for discrediting plaintiff's testimony.

The treatment a plaintiff receives, especially when conservative, is a legitimate consideration in a credibility finding.  Tommasetti, 533 F.3d at 1039 (ALJ permissibly discounted plaintiff's testimony where evidence showed conservative course of treatment); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(the ALJ properly considered the physician's failure to prescribe medical treatment commensurate with the "supposedly

excruciating pain" alleged).    Moreover, in assessing a claimant's credibility, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."    20 C.F.R. § 404.1529(c). Indeed, the Ninth Circuit has "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

On the record before me, the ALJ reasonably could discount plaintiff's testimony based on his conservative treatment.  The ALJ discussed that plaintiff described his pain as well-controlled with over-the-counter Ibuprofen and a muscle relaxer six days a week, and that once a week, plaintiff's pain can exceed that level.  The ALJ also noted plaintiff's testimony that he prefers not to use prescription pain medications for those instances of excessive pain and had tried prescription pain medication post-surgery only while in the hospital.  Plaintiff argues that he has declined stronger pain medication because Dr. Perez-Gil expressed a concern about prescribing opiates for his pain, noting the risk of addiction due to plaintiff's history of substance abuse.  However, as the ALJ indicated, plaintiff has declined all prescription pain medication, including non-narcotics.  The ALJ's findings in this regard are fully supported by substantial evidence in the record, and I conclude the ALJ could reasonably infer that plaintiff's pain is not as debilitating as alleged.  Parra, 481 F.3d at 751.  Because

the ALJ's conclusion is a rational one, the court will not engage in second-guessing. Tommasetti, 533 F.3d at 1039.

The ALJ also discounted plaintiff's credibility on the basis that his complaints about the severity of his pain and depression were not supported by the medical record. A lack of objective findings can undermine a claimant's credibility where there are other reasons present. Burch, 400 F.3d at 680-81. As the ALJ detailed, plaintiff's treating physician repeatedly found that plaintiff was functional. As the ALJ noted, plaintiff has little or no medical records for 2007 and 2008 and he appears to have established care with Dr. Perez-Gil in September of 2008, at which time he complained of chronic back pain, depression, and requested a muscle relaxer. Tr. 413-16. Dr. Perez-Gil prescribed Flexeril, Fluoxetine, and counseled plaintiff about cannabis, alcohol, and tobacco cessation. Tr. 416. In March of 2009, plaintiff reported his pain was within tolerable control and that he was fairly functional. Tr. 416. In October of 2009, plaintiff reported that his pain was responding well to the Flexeril. On June 24, 2010, other than a failed attempt to quit smoking, plaintiff reported no concerns or complaints and that he remained "active and functional." Tr. 436. And, as the ALJ noted, on November 18, 2010, Dr. Perez-Gil indicated that plaintiff reported no complaints, that Flexeril at night gives plaintiff "significant pain relief," and that plaintiff remained functional and was

16 - OPINION AND ORDER

meeting all his functional goals. Tr. 432-33. The ALJ also noted that Dr. Perez-Gil found that plaintiff had a full range of motion in his lumbar spine, and a negative straight leg test in December of 2010. Thus, with respect to plaintiff's back pain, the ALJ's determination is supported by substantial evidence in the record.

Additionally, the ALJ's conclusions concerning plaintiff's alleged mental limitations also are supported by the record. With respect to plaintiff's depression, the ALJ again discussed plaintiff's prescription Fluoxetine and the fact that, at the time of the hearing, plaintiff was no longer taking anti-depressants or seeking any other mental health treatment. On the record before me, the ALJ could reasonably conclude that the severity of plaintiff's depression and mental health limitations were not supported by the objective medical evidence, and thus, could discount plaintiff's credibility on this basis.

Lastly, the ALJ considered plaintiff's marijuana use as a factor in discrediting plaintiff's testimony. As the ALJ discussed, plaintiff testified that he previously used marijuana daily and was not paying for it or obtaining it pursuant to Oregon's medical marijuana law. While plaintiff asserts that the ALJ should not discredit plaintiff for admitting to medical marijuana use, I conclude that discrediting plaintiff for using medical marijuana where it has not prescribed by a health care provider is not erroneous. See Morgan, 169 F.3d at 600 (questions

of credibility are solely functions of the Commissioner). However, even if the ALJ should not have discounted plaintiff's credibility on this basis, on the record before me, the ALJ's remaining reasons provide clear and convincing support for the adverse credibility determination. E.g., Batson, 359 F.3d at 1197.

**III. Lay Testimony**

Plaintiff argues that the ALJ improperly rejected the lay testimony of Ronald York, plaintiff's son, without discussion. Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114. To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

Plaintiff is correct that the ALJ's failure to discuss the lay witness testimony was error. However, failure to credit lay witness testimony does not automatically warrant reversal. Id. at 1121-22. An ALJ's failure to discuss testimony may be harmless if it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122 (citations and internal quotation marks omitted). Thus, where a lay witness does not describe any limitations beyond those described by the plaintiff, and the ALJ provided "well-supported, clear and convincing reasons" to reject the plaintiff's testimony,

those reasons may similarly discredit the lay testimony. Id. at 1122.

Here, the functional limitations described in Mr. York's lay witness report described the same limitations set forth in plaintiff's own statements. See Tr. 220-226, 283-289. Indeed, in the Third Party Function report, Mr. York described that plaintiff was depressed, was taking medication, and that plaintiff's activities were limited due to lack of money and transportation. Mr. York also described that plaintiff had become reclusive and isolated since his prior back surgeries, and did not handle changes stress or changes in routine very well. These allegations mirror those contained in plaintiff's report. Here, the ALJ discounted the severity of plaintiff's depression and its attendant functional limitations because plaintiff had discontinued taking anti-depressants and had not otherwise sought treatment for his depression. The ALJ also discredited plaintiff's testimony about the severity of his back pain because it was controlled with conservative treatment and was not supported by the objective medical evidence. Because the ALJ's reasoning could apply equally to Mr. York's statements, the ALJ's error in failing to address Mr. York's statements did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless. Id.

////

////

## IV.  **Medical-Vocational Guidelines at Step Five**

At step five of the sequential evaluation, the burden shifts to the Commissioner to establish that there are jobs in the national economy that the claimant can do.  <u>Andrews</u>, 53 F.3d at 1043.  The ALJ must determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1103-04 (9th Cir. 1999).

The Commissioner can satisfy this burden in two ways: (1) by the testimony of a vocational expert (VE); or (2) by reference to the Medical-Vocational Guidelines (the "grids").  <u>Tackett</u>, 180 F.3d at 1100-01; 20 C.F.R. pt. 404, subpt. P, app.2.  "When the grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and nonexertional limitations, ... the grids are inapplicable and the ALJ must take the testimony of a VE."  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000); <u>Thomas</u>, 278 F.3d at 960.

Plaintiff appears to argue that the ALJ erroneously applied the "light work" grid instead of the "sedentary work" grid when plaintiff turned 50 and changed age categories to "closely approaching advanced age."  According to plaintiff, the ALJ was required to apply the sedentary grid because it most closely resembles plaintiff's limitations, and that under the sedentary

grid, a finding of "disabled" is directed.  I disagree for several reasons.

First, plaintiff's lifting restriction falls in the "light" work category – a finding plaintiff does not challenge.  Plaintiff testified, and substantial evidence supports, that he was capable of lifting 20 to 25 pounds.  Under the regulations, light work "involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles."  20 C.F.R. § 404.1567(a).

Second, consultation with a Vocational Expert was recommended because plaintiff's exertional base was eroded by several nonexertional limitations.  See SSR 83-12 (where a claimant's exertional base falls between two categories, ALJ should consult a VE).  Moreover, an ALJ may not rely on the grids if a claimant's limitations do not fully fall within a given category.  Tackett, 180 F.3d at 1102 (an ALJ may rely upon the grids at step five only when they "completely and accurately" represent all of a claimant's limitations); accord Thomas, 278 F.3d at 960; Moore, 216 F.3d at 864.

Third, contrary to plaintiff's suggestion, the VE did not testify that plaintiff's limitations most closely resemble sedentary work.  At the hearing, the ALJ found that plaintiff had

the residual functional capacity to perform light work, except for certain exertional and nonexertional limitations expressed in a hypothetical presented to the VE:

> the individual could only occasionally climb ladders, rope and scaffold; only occasionally climb ramps and stairs or stoop; could frequently crouch, crawl, kneel and balance; should have no public contact; brief occasional coworker contact is all right; should perform tasks no more complex than SVP 2, entry level work as defined in the Dictionary of Occupational Titles; requires the option to sit or stand at will while still performing essential components of the task at hand. Tr. 81

In response to the hypothetical, the VE identified three representative jobs: an electronics worker (light), an eyeglass polisher (sedentary) and a toy stuffer (sedentary). The ALJ asked the VE to consider whether jobs existed in the national economy for an individual with the same limitations and also to "assume the individual is closely approaching advanced age." Tr. 82. In response, the VE identified three jobs he classified as light: an electronics worker (light), bench assembler (light) and a laundry sorter (light). When plaintiff's counsel inquired whether the jobs were more properly characterized as sedentary due to the sit/stand option, the VE testified that the jobs also may require lifting more than 20 pounds. Tr. 88. Tr. 88. Again, it is undisputed that plaintiff is capable of lifting 20 pounds, which is a light work lifting restriction under the regulations. Thus, the ALJ did

not apply the incorrect category or use the incorrect grid as a framework for the VE's testimony.

In short, the evidence in the record before me clearly supports the ALJ's decision to use a VE, and that rational decision must be upheld. <u>Moore</u>, 216 F.3d at 871. Moreover, plaintiff has not demonstrated that the ALJ has made any error consequential the non-disability determination that would undermine the ALJ's step five findings. Accordingly, I conclude that the ALJ did not err in relying upon the VE's testimony at step five.

<u>**CONCLUSION**</u>

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _6_ day of NOVEMBER, 2013.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

23 - OPINION AND ORDER